JOSEPH NASH and another *v.* EDWARD E. PARKER.

Where property is sold without any declaration of the mortgages existing on it, and it is not shown that the purchaser was aware of their existence, the vendor will be bound to exhibit a valid and unincumbered title, previous to calling on the vendee to perform his contract.

A purchaser who receives the rents of the property purchased, and subsequently declines to complete the contract on the ground that the vendor could not make an unincumbered title, is bound to refund the rents so received.

APPEAL from the District Court of the First District, *Buchanan,* J,

*Roselius,* for the plaintiffs.

*Preston,* for the appellant.

SIMON, J. This case was submitted without any oral or written argument. The petition states, that on the 29th of January, 1840, the petitioners caused to be sold at public auction, by a duly commissioned auctioneer, three lots of ground, which they describe, and which were adjudicated to the defendant, as the last and highest bidder, for the sum of $5000, for each of said lots, making a sum of $15,000, payable as follows : one-fourth cash, and the balance in three equal instalments, at six, twelve, and eighteen months' credit, for approved endorsed notes, secured by special mortgage, &c; that after the sale, the defendant neglected and refused to comply with the terms and conditions of said sale, although he was legally put in default, and an act of sale was tendered to him; that afterwards, said property was again sold at public auction, on the same terms and conditions, at the risk and on account of said defendant; that at the second auction sale, the property was sold for $10,000, making a difference of $5000 between the first and second sales; and that the expenses incurred, and the rents received, and the interest due on account of said property, amount to $881 50. The petitioners pray for judgment against said defendant, for the sum of $5881 50.

The defendant admits in his answer the adjudication made to him. He alleges that he was always ready and willing to comply with the terms of the said adjudication; that he demanded that

the plaintiffs should transfer the property to him by act of sale ; and that the plaintiffs' failure to raise and cancel the mortgages existing on the property, and to pass him a full and unincumbered title thereto, and the subsequent sale of the same, had caused him damages to the amount of $5000, which he sets up as a reconventional demand. He prays for judgment accordingly.

There was judgment below in favor of the plaintiffs for $5000, from which the defendant has appealed.

This suit is brought under the provisions of art. 2589 of the Civil Code, which gives to the vendor of property offered for sale at public auction, the right, in case of the purchaser's not complying with the conditions of the sale, by paying the price at the time required, of proceeding to a re-sale of the thing sold, at the risk of the first purchaser. Such second sale fixes the measure of the liquidated.damages which the delinquent purchaser is bound to pay, as the latter remains a debtor to the vendor for the deficiency, and for the expenses incurred subsequent to the first sale. We shall, therefore, proceed to examine whether the evidence sustains the plaintiffs' action, and to inquire if the defence set up is such as to liberate the defendant from the payment of the damages claimed.

The evidence shows, that the property described in the petition was adjudicated to the defendant for the sum of $15,000, one-fourth of which was to be paid in cash, and the balance in three equal instalments, at six, twelve, and eighteen months' credit, for approved endorsed notes ; that the defendant, repeatedly called on to comply with the terms of the adjudication, gave a variety of reasons for refusing to do so, the principal of which was, that the title could not be made to him, and that the mortgages were not raised. One of the witnesses states that he heard the defendant observe to the plaintiffs' agent, that he, defendant, was and *had always been ready to take the property, the moment that the mortgages were raised and the property unincumbered ;* that this was said at a time when the plaintiffs' agent had handed to defendant a written notice in the presence of the witness. Several months having elapsed after the adjudication of the property to the defendant, the same was re-advertised for sale under the same terms and conditions ; and after its having been knocked down to the defendant's brother, for the

sum of $12,200, said defendant, and one John Mitchell were of-
fered as endorsers, and refused by the vendors; whereupon the
property was again offered at public auction by order of said ven-
dors, and finally adjudicated to F. Ganahl, who had acted as the
plaintiffs' agent in the sale of the property, for the sum of
$10,000. The deed of sale to Ganahl, is also made a part of the
record.

It further appears, by the certificate of mortgages, that the pro-
perty was, at the time of the last adjudication, incumbered with
mortgages to the amount of $24,809 50: to wit, one in favor of
Charles Byrne for $7400; another in favor of the City Bank of
New Orleans, for $10,000; and a third in favor of the New Or-
leans Gas Light and Banking Company, for $7409 50, exclusive
of interest; all which mortgages existed also on the property at
the time of the first adjudication. Nothing shows that those mort-
gages were to be raised after the sale; or that the creditors had,
ever consented to receive the proceeds of the sale in full satisfac-
tion thereof, except, that from a resolution taken by the Board of
Directors of the City Bank, after the adjudication to the defen-
dant, and a few days previous to the last sale, said Bank agreed
to discount the paper received for the property, out of which one-
half of the sum due to the Gas Bank was to be paid, and the ba-
lance of the proceeds to be applied to the payment of J. Nash's
note for $10,000. But the consent of Charles Byrne and of the
Gas Light Bank, does not appear to have ever been obtained.

It is, also, in evidence that the defendant received the rents of
the property after the adjudication made to him, to the amount of
$351, which is a part of the damages claimed by the plaintiffs.

Under the facts and circumstances of the case, we think the
court, a qua, erred. The mortgages with which the property was
incumbered at the time of the adjudication to the defendant, ex-
ceeded by about ten thousand dollars, the amount of the purchase.
They were not declared to the defendant, and nothing shows that
he had any knowledge of the existence of those mortgages, when
the property was adjudicated to him. The title, therefore, was
not a safe and unincumbered one; and it is clear, that the danger
in which he stood of being evicted by actions of mortgage on the
part of the creditors, whose consent to the sale was not obtained,

was, of itself, a sufficient cause or excuse not only for withholding the price, if the incumbrances had been discovered after the perfecting of the contract of sale, but even for not complying with the conditions of the sale, and refusing to receive the transfer of the property. In the case of *Noe* v. *Taylor*, 11 La. 556, which presented a question very similar in its nature to the present, we said that the seller is bound, previous to calling upon the vendee for a performance of the contract, to exhibit a valid and *unincumbered title*. Indeed, how could the vendor pretend to compel the purchaser to pay him the amount of the price, or to give him the endorsed notes required by the terms of the adjudication, when it is shown that the price itself is far from being sufficient to extinguish the incumbrances ? In this case, at the very time of the last sale, the mortgages were still in existence ; they were not raised ; and, if, subsequently, arrangements were made with the creditors to disincumber the property, this is no reason why the defendant should be made liable to pay the difference of the two adjudications. The title being incumbered at the time of his purchase, he had a right to withdraw, and to decline completing the negotiation, until the mortgages were raised.

The defendant, however, had no right to receive the rents of the property to which he had acquired no title. He may have collected those rents on the supposition, that the plaintiffs would be subsequently enabled to give him a good and unincumbered title, and to complete the contract ; but it was his duty, after the second adjudication, to pay back the amount received to the plaintiffs. This amount forms a part of the plaintiffs' demand ; and, although the defendant is discharged from any liability to pay the difference of the two adjudications, he must be condemned to reimburse the amount of the rents by him collected.

It is, therefore, ordered and decreed, that the judgment of the District Court be annulled and reversed, and that the plaintiffs recover of the defendant, the sum of three hundred and fifty-one dollars, with legal interest per annum thereon, from judicial demand until paid, and the costs of the lower court, those in this court to be borne by the plaintiffs and appellees.